And now I'm not going to read off my day sheet because I think it's got the name spelled correctly, versus Kott. The case number for those who are interested, 04-50551. Your Honor, George Cardona for the United States, and as Your Honor's reading of the list of names suggests, the first matter is a housekeeping matter. The government in this matter is technically, according to the clerk's office, designated as the appellee. However, our position is actually adverse to Dow Jones, which is the appellee, and aligned with Mr. Kott, who is the appellant. So needless to say, Dow Jones is reluctant to grant me any of their time for argument, so I would ask the Court as a courtesy if I could have four to five minutes of Mr. Kott's time. Did you actually take an appeal? No, we have not appealed. We are a party in interest because the underlying case is United States v. Kott. Okay, in any event, you don't go first. Whether you go at all is another question. Good morning. May it please the Court, Ellen Garofalo for Appellant Irving Kott. We're here today on Dow Jones' motion in the district court to unseal search warrant affidavits that were returned, issued, executed in August of 1997. They have never been unsealed, never been disclosed to the defendant appellant in this case. Dow Jones also seeks to unseal an indictment, which is a somewhat unusual document, in that the indictment was issued, returned by the grand jury, sealed, never unsealed, and was dismissed prior to being unsealed. There was a subsequent information to which Mr. Kott pled, but the indictment itself was never unsealed and never the subject of any proceeding. The indictment, in fact, and the search warrant affidavits have not been disclosed to Mr. Kott or his counsel during the eight years, seven to eight years that this investigation continued. I have two questions. Number one, is there any classified information in any of this material that's sealed that we're fighting about? That question would have to be posed to the government as we have not seen the material that's under seal. You know, everybody keeps saying we haven't seen the, you know, our client, my client has never seen the indictment, has never seen the search warrant. I find that rather odd, number one, but number two, so what? We just don't know what's in it. So that's all that means? That's all that means. Well, it means two things. First, we don't know what's in it. Then why are you trying to quash it? We're trying to quash it because we know enough about the case to understand that when this case began eight years ago, there were massive allegations of stock manipulation against approximately 200 individuals and entities identified by the government in a proffer letter to the defense. Most of that, as we understand the progress of this investigation, fell by the wayside. The SEC abandoned the investigation, which was based on the same allegations. The information and material contained in the search warrant affidavits, we have reason to believe bears little or no relationship to the information that was ultimately pled to in this case. And in fact, we have strong reason to believe, based on the eight years of involvement in this case, that those allegations were unfounded, were based in fact on a Time magazine article that was subsequently discredited, and the author of that Time magazine article back in 1996 was in fact terminated from Time magazine for publishing an article without adequate, without checking his sources, and it was an article that was just replete with misstatements concerning Mr. Cott. We have strong reason to believe, without having seen the search warrant materials, that those materials reflect very closely, parallel very closely the allegations in that Time magazine article. How is it that somebody pleads to a case without even knowing what's in the indictment or what the evidence is? We were engaged in an almost eight-year investigation. Mr. Cott is 74 years old. He's seriously ill. This was a tremendous strain on Mr. Cott. In July 2003, we were informed that an indictment had been returned. There was an assessment made by Mr. Cott and his family that he was in no condition to survive a trial. Quite frankly, it was in effect akin to a business decision. He had to settle the case. We did not have the ability to come into court and try this case. Mr. Cott is a Canadian citizen, and it was deemed that it was in his best interest to resolve the matter. We also believed at the time and continue to believe that the allegations to which Mr. Cott pled were, in fact, well-founded, and there was a basis for Mr. Cott's plea to the information. The information concerned two events, one in 1993, one in 1995. We believe that that information fully reflects the seriousness of Mr. Cott's conduct and the full extent of Mr. Cott's criminal activity, that anything else that might be included in the under seal indictment would be unfounded by the evidence. I mean, at the time of the plea, there was no agreement with the government that this matter would remain sealed. There was no specific agreement. The plea agreement contained language which has become boilerplate, at least in our district, that there are no other agreements, that this is the sole agreement between the defendant and the government. The plea agreement specifically provides that the indictment would be dismissed, and it was assumed, perhaps incorrectly by the defendant appellant in this case, that that was the end of the matter. There was no press whatsoever following Mr. Cott's plea. There was certainly no hue and cry from the public for additional information. Even Dow Jones and the Wall Street Journal failed to report any information concerning the plea, although it is clear that they had noticed that the plea was about to be entered. It was a case that was old. The facts underlying the criminal matter occurred mostly 10 to 12 years prior, and it didn't seem to be a case in which there was much interest at all. Quite frankly, it was a surprise that anybody was seeking to unseal this information. Well, you've got two parts to your mission, the indictment and the search warrant. We do. Affidavit. I will speak quickly. They can be analyzed either under the common law or a First Amendment, a qualified First Amendment right. The test is the same, the logic and experience test. With respect to search warrant affidavits, this circuit has found in Times-Mirror that the analysis is done under the common law rather than the First Amendment. We believe the district court erred by applying a First Amendment standard, and the significance is that under the common law as opposed to the First Amendment, there is a weighing of interests rather than having to show a compelling government interest. We don't believe that the district court in this case properly considered the privacy interests, the age of the information in the indictment, and the other interests that should have been considered in determining whether or not there was a common law right to access. We agree with Times-Mirror that there is no common law right to access. In a sealed indictment that is not the subject of litigation, that thread has been picked up in a nunza. The reason that the indictment, as well, should be analyzed under the common law is because in this case, the indictment was dismissed. It was not a charging document, which traditionally becomes part of the criminal proceeding and part of a court proceeding, which may be subject to a First Amendment analysis. This document was a really unusual document in that it was dismissed without ever having been unsealed. The information was effectively separate and apart from the indictment. We believe, therefore, that under the common law, the district court should have analyzed privacy interests of all of those who were involved in this investigation from the beginning, including Mr. Cott, whose interest doesn't disappear, although may be diminished by his plea. With that, Your Honors, I would like to reserve the balance of my time for rebuttal. You've saved yourself a long rebuttal.  Your Honor, I'm sorry. May I continue? Yes, you may. Thank you. Okay. The Times-Mirror Court makes it clear that search warrant materials not only are analyzed under the common law, but that these materials are not really subject to disclosure unless there's litigation. There's language in the Times-Mirror case to this effect. This is the language that's picked up in Anunza, which makes very clear in the district court case that unless there's litigation, some reason, some public interest in disclosing this information, it should not be disclosed. It really goes to the second prong of the analysis. The first prong is whether or not there's a historic tradition of openness in the documents sought to be disclosed. The Times-Mirror says no, there isn't in search warrant materials that have not been the subject of litigation. Well, the Times-Mirror also said that the question is still open, according to Anunza, as to whether the First Amendment right to access to warrant materials after investigation is concluded or after indictments have been returned. The Times-Mirror left the question open. Anunza read Times-Mirror to hold that unless there's actual litigation, you don't just look at the indictment, whether or not there's been an indictment, but whether or not there's actual litigation. You look at whether or not the second prong of the test is whether public access will play a significant positive role in the functioning of the particular process in question. Documents under the First Amendment that are traditionally open are documents that are part of the criminal process, documents where there's litigation in court, plea agreements, for example, as in the Oregonian case. Here, there is no process. Nothing happened in this case. Nothing happened with the indictment, which was never unsealed. Well, but the indictment formed the basis for an information that resulted in a plea agreement and a public process. The indictment itself was different from even a superseding. In this case, the information itself was different from a superseding an ordinary superseding indictment or information because this indictment was dismissed. It was dismissed before the plea was entered. The indictment was gone. It effectively became a nullity. In Times-Mirror, the court talks briefly about the press's argument that there's a general right to disclosure, that the public can be educated, the public can know more about the judicial process. Times-Mirror rejected that argument. It found that wasn't enough. Dow Jones here has failed to articulate what the public interest is in the disclosure of this material and how the particular process will be advanced or promoted in any way by the disclosure of this material. What do you think Dow Jones is going to say when they stand up as to what the public interest is? I'm curious to hear what Dow Jones will say. Well, it will obviously be the government failed and went into the tank on a serious case, and we're entitled to report that. Well, I think Dow Jones has very little information on which to base that opinion. Yes. I'm very often here defending the government, but in this case, the government returned an indictment. It launched a serious and intensive dialogue between the government and the defendant. And in the end, the government, as is consistent with its own policy, charged only those allegations that it felt were supported by the evidence. Excuse me. Was there any attempt in this case, either with respect or the indictment, to engage in a redaction process? No. And I think that there wasn't. And I think that that's one of the errors, if you will, made by the district court, that there should have been some effort. Was the district court asked to engage in a redaction process? The district court was not asked to engage in a redaction process specifically, but the district court was made aware that it was required to look at alternative means to disclose the information that was disclosable. The district court found that the — in fact, the district court made — the district court order reflects the district court's belief that the search warrant affidavits were detailed enough that they would disclose to the public fully the details of all the charges, the potential charges or allegations against the various initial subjects of the investigation. That's contrary — directly contrary to language and time's mirror. The district court ordered the disclosure without discussion of redaction. I think redaction in this case might be difficult, although the government is probably again in a better position to speak to that issue. Okay. Well, do you want to save seven minutes? They may have a lot to say. Seven minutes. Okay. Thank you, Your Honor. I — although we're doing our panel consultation at the moment, my instinct is to hear from Dow Jones for 15 minutes, to hear from the government for five. Do you have a different opinion? That's fine. Yeah. Why don't we hear from Dow Jones, and then we'll give you five minutes and see where we are. Thank you. Good morning, Your Honors. May it please the Court, I'm Theodore J. Bucharest, Jr., representing Dow Jones, the publisher of the Wall Street Journal. First, I think that I'll take the question of the indictment and the search warrants one by one. With respect to the indictment, I think it's absolutely clear that there's a strong presumption, First Amendment-based presumption of public access. It's the charging document in a case. It's the case where the government launches its ability to prosecute an individual. This indictment was the product of, as Mr. Kotz and counsel have recognized, a sweeping probe that lasted for six or seven years and resulted in a 48-count indictment. The cases are clear. The U.S. Supreme Court, the other courts have held that an indictment is the quintessential document in a criminal case that starts the ball rolling and is subject to the First Amendment presumption of access. What's your principal Supreme Court case? The Smith case that we cite where the Court says that crucial to the process is an indictment, an open court, and a public proceeding. We cite that, and then there's the U.S.'s. I think it's Smith v. Doe is the Supreme Court case, and then there's the U.S. v. Smith from the Third Circuit, which specifically talked about indictments as well. So I think it's just a fundamental tradition under the experience and logic test that in the United States, when a person is indicted, that document is presumptively and generally open to the public. And there are limited bases for sealing to ensure that the target or the defendant doesn't flee. Sometimes there is danger to witnesses, that sort of thing, which might justify limited sealing. But there's no case that's been cited by the government or by Mr. Cott that suggests that an indictment could be permanently sealed. With respect to the fact that the indictment ultimately was dismissed, I must disagree with Mr. Cott's counsel. We argued vigorously to the district court, and the district court agreed with us, that there was a strong public interest, first just in general, in seeing indictments and seeing the basis for a grand jury bringing an indictment against an individual. And with respect to the specifics of this case, as Judge Crock pointed out, that here the disparity between a 48-count indictment based on years of investigation around the world and then this odd situation where the defendant keeps saying, we've never seen the indictment, and there's this intense negotiation period, and then lo and behold, we get the two-count indictment, no jail time. The circumstances are odd and strange, and we didn't necessarily argue below. We don't argue here that that necessarily means that the government engaged in wrongful behavior, but it certainly raises serious questions about what happened here. And as the district court recognized explicitly, the public has a legitimate interest to find out what happened, and one of the reasons for the First Amendment right of access is to ensure public confidence in the system. And here, the lack of information. We don't have a lot of information, as Ms. Garofalo pointed out, because everything is under seal, but the lack of information instills lack of confidence that the system functioned properly, and that's why openness is the presumptive mode of analysis. So we believe that on the indictment, it's just absolutely clear. Do the cases suggest there are any circumstances under which an indictment or parts of an indictment after the whole thing is over might remain sealed, short of classified information or nuclear secrets or something like that? Not that I've seen, Your Honor. And here, as, you know, this notion that it was all meaningless and there was no proceeding and nothing happened in this case, Mr. Cott pled guilty to two felonies under Section 1001, based on the fact that there was this indictment hanging over his head. And it didn't just disappear in the, I think it's the, well, in the plea agreement itself. It says that the indictment could be reinstated, the 48-count indictment, if Mr. Cott breached the plea agreement between the time of the plea was entered and sentencing. So the government had this 48-count indictment hanging over Mr. Cott's head, based on the grand jury's good faith investigation over a long period of time, and they used that to negotiate this plea, which, to the objective observer, looks like they caved in and came to a very weak deal that was very favorable to Mr. Cott, who had been the subject of years and years of allegations of securities misconduct in different countries. And neither side has cited, neither the governor or Mr. Cott has cited any cases that suggest an indictment could be sealed permanently, particularly once the case is over. So as far as I'm aware, there's no cases that suggest permanent sealing of indictment. And the rules, the federal rules of criminal procedure, suggest once the case is over, once there's an apprehension or a trial, the indictment must be unsealed. What about the search warrant? With respect to the search warrant, it's a slightly different question, because the Times-Mirror case did address this issue under the First Amendment pre-indictment. Yeah, that was during an ongoing investigation. Exactly. And the Court was very careful to say that there were legitimate interests where the government is still investigating to keep an indictment under seal under certain circumstances, and there wasn't a presumption of openness because these other interests could be jeopardized. And because of the way the system has operated through the years, there wasn't a presumption prior to the indictment. But once there's an indictment, and here, once the case is over, and the search warrant, again, this wasn't some nullity. It served the basis of the enormous expenditure of government resources for this sweeping probe, as Mr. Cott's lawyers have described it. And that then formed the basis of the evidence put before the grand jury, which indicted Mr. Cott. And now that the case is over, the Times-Mirror rule doesn't apply. I think that this Court in Times-Mirror must have said three times, we're deciding this on a narrow basis, only focusing on the pre-indictment issues. Since Times-Mirror, other circuits have grappled with the question and found that post-indictment, there is a strong tradition of openness of search warrant material. Which court issued this search warrant? Where did it come from? I believe it came from the Central District of California. Where was it served? That I don't know, Your Honor. I believe it was served on the J.B. Oxford offices here in Beverly Hills. What connection do those have with Mr. Cott? The basis of the criminal allegations, as we understand it, were that he had engaged in some sort of boiler room operation when he became involved as a consultant for J.B. Oxford. And in connection with that company, engaged in the securities fraud. Doesn't the party on which a search warrant is served have an absolute right to have access both to the warrant and to the affidavit? I would think so, Your Honor. I think probably there's a due process right to that. And that's one of the things that's very strange about this. We've never seen it. To my mind, there's been almost a willful decision by the defendants to not look at the material. That's why I ask, what difference does it make? When you serve a search warrant on somebody in the United States, they're entitled to know what's going on. Absolutely. Over and out. And to challenge it. Exactly. Mr. Cott was up in Canada once this proceeding started. He stayed in Canada because he didn't want to subject himself. Well, the search warrant was served on J.B. Oxford offices. So they got a copy of the warrant. I would think so, Your Honor. But I don't know what relationship that has to Mr. Cott. But I do believe that the search warrant was directed towards Mr. Cott as well. And so I can't speak. And, again, the government and Mr. Cott have the information on this, whether or not it was served upon Mr. Cott somewhere. But I can't imagine that if Mr. Cott had wanted to see a copy of the search warrant or J.B. Oxford had wanted to see a copy that they couldn't have obtained one. I just don't see what it adds that we didn't see it. I don't either, Your Honor, except that it means that all these arguments that Mr. Cott's lawyers have been making about the potential damage of releasing the information are total speculation. They claim they're invoking the rights of third parties. They don't know what anything is. They're invoking kind of a right of privacy against we're not sure what, but we don't want to find out. That's exactly right. And on this redaction point, Mr. Cott's lawyers argued there should be no redaction and that it wouldn't be appropriate. It's on page 34 of the supplemental excerpts of record. The government never made a redaction argument in the court below. They didn't file a brief. They did argue at the hearing, but they didn't suggest that redactions were necessary. And the district judge reviewed the material and found the indictment has been dismissed. Mr. Cott has pled guilty. Mr. Cott can go out and say, hey, there was this 48-page indictment. I basically won. I only pled guilty to these two minor counts. The third parties also. They can say this case went away and make these same arguments that Ms. Garofalo argued now. So the notion that there's some terrible threat to privacy, even if they had articulated it specifically, which they haven't, I think is baseless and does not meet the test either under the First Amendment or the common law. The Anunza case, which Mr. Costler has placed great reliance on in this case. First, it's a district court decision. Secondly, the court recognized the time the mirror left open, the precise question presented here, whether a post-indictment search warrant affidavit is subject to a presumption of openness. Third, the court said that search warrant materials invariably will become public. That's their strongest case, which it contemplated that at some point, once judicial proceedings have been launched, the search warrant materials would be available for public inspection. There was a judicial proceeding in this case. Mr. Cott pled guilty based on the information that was filed by the government, which was based in turn upon the evidence that was gathered through the search warrant, which was presented to the grand jury. So there were judicial proceedings that related to the warrant. And it's no minor matter, even if it's drastically less in terms of the severity of the penalties inflicted when you compare it with the 48-count indictment. He pled guilty to two felonies. And so Anunza, we believe, supports us directly on these issues and supports the notion that there's a First Amendment right of access. There's also a common law right of access to access to the search warrant materials. The other argument that Ms. Garofalo mentioned about this Time Magazine article was never made to the trial court. It's total speculation, this notion that we've heard today for the first time that there was a Time Magazine article and that led to the warrant and it turned out that was all wrong. There's no support for that in the record. It was never mentioned in the district court as far as I can recall. And even if it had been, it would be insufficient. There would be public interest to see what the government used for the basis of the warrant. And if it is truly baseless, as Ms. Garofalo argued, then Mr. Cott could make that argument if it was ever an issue of public debate. So there's ample protections in that regard. The other notion that has been floated is that there wasn't great public interest at the time of the plea agreement. Well, first of all, everything had been filed under seal in terms of the indictment and the warrant materials. We filed our motion to seal within a couple weeks after we learned of this plea agreement that had been entered. So we moved quickly. And there is great public interest in part because of the disparity, principally the disparity between the plea agreement that was accepted and the original 48-count indictment. So for all those reasons, we believe that the district court acted well within its discretion and made correct legal rulings when it ruled that these documents should be unsealed and that this court should affirm and order the documents to be released as soon as possible so that the public can see what is in the record. My day sheet is a little odd, and I didn't get your name. Are you Mr. Boutros? Yes. Okay, thanks. Thank you. Thank you. Now, I realize I fouled this up. I should have allowed the government to speak immediately after Ms. Garofalo. Why don't we hear from the government? You've not had a chance to respond to the government. We'll give you a short time to respond to the government as well. So let's hear from the government, and we'll hear again now from you, Ms. Garofalo, when the government is finished in your rebuttal. So far, we've been playing Hamlet without Hamlet, and I have delayed your entrance. Sorry. That would be great. Thank you. Okay. Thank you, Your Honor. First, just so we get this out of the way, there is neither any classified information nor anything that would be classified as grand jury information subject to Rule 60. So what are you trying to suppress? Well, our view is that we're not trying to hide anything. Well, then what's going on? What's going on here is, I think, from our point of view, is a concern with the standard that the court applies in determining whether these documents should be unsealed. And to understand that, let me turn first to the search warrant affidavit. And if you look at the search warrant affidavit, I think, first, there are a couple of areas we can all agree on, which is, first, under times mere pre-indictment while the investigation is going on, there's neither a First Amendment right of access nor a common law right of access. Then the second time period I think we can all agree on is that if there is a suppression hearing, in other words, if there's an actual court proceeding that involves a search warrant affidavit where what's in the search warrant affidavit is an issue, where you've got a public court proceeding, at that point, as Nzunza makes clear, and as I think as all the other cases make clear, at that point when there's a suppression hearing, there's both a First Amendment right of access and a common law right of access. And the issue in this case is we're in that in-between area. We are post-indictment, but we have never had a public court proceeding because this search warrant has never been put at issue because there has never been a time in which evidence from that search warrant has been put in play, and so there's never been an interest in any way to suppress. Roberts. But in street language, so what? The case is over. Well, that matters, and I think if you look at it. How does it matter? If you look at the cases, it matters in two ways. First, if you look at Nzunza, Nzunza suggested in that time period, pre-suppression hearing, there's no right of access. It's either the First Amendment or the common law. And it gets there two ways. First, it looks at history and says, look, there's no historical right. There's never been a traditional right of access. More importantly, it looks at it and says, there's no public scrutiny won't play the role it's supposed to play. If we look at the test under the First Amendment access, it's not just whether there's a public interest. It's whether the public scrutiny of the documents and questions will, in fact, play a positive role. And Nzunza says, no, look, if we're not going to have litigation, in other words, if there's not an opportunity for the court and the parties to come in and litigate this and present to the public all of the information from both sides, public scrutiny is, in essence, going to be nothing more than what Nzunza looks at as and what other cases have looked at as, you know, perhaps scandal mongering or looking for information that will then be put out there and force people to be put to the test in the public where they haven't had the opportunity to use judicial proceedings to test the accuracy of that. Let me turn then to the other cases because there's a fallback position, which I think, and I would strongly suggest this to the court, if the court is not going to follow Nzunza and say there's no right at all, the fallback position is what the other cases have done. And this is the standard that the Fourth Circuit has applied and that basically every case that Dow Jones has applied, which is in that interim time period, post-indictment, but before there's a suppression hearing, say, there's no First Amendment right to access, but there is a common law right of access. Now, you say post-indictment, but before any suppression hearing has taken place. Right. That suggests that there might still be one. Here, of course, there is not going to be one. Correct. And that's why I'm saying in this case we are of necessity in that second time period. There is never going to be a suppression hearing. No, no. There's another time period. The case is over. The case is over, but it can't. The suppression hearing is gone. I mean, it's all over. That's true. I think you're trying to artificially force this into a slot into which it doesn't fit. No. What I'm saying is there is never going to be a suppression hearing. And so we are in the post-indictment, but of necessity there will never be a court proceeding in which the search warrant affidavit is at issue. That to me is utterly irrelevant. The case is over. The case is over, but the question still is what standard do we apply? In other words, post-indictment, but before... That may be true, but I don't think it's informed one way or the other by the fact that there's no suppression hearing scheduled. I think it is because for two reasons. One, because the cases, and Zunza does this, as do a number of the other cases, the cases look at when a First Amendment right of access is triggered as an adjunct to whether there is a court proceeding in which that particular document is going to be in play. As a result of the case ending the way it did here, there is never going to be a court proceeding... That's right. Dow Jones comes in and says we want to take a look at the government and see whether you went into the tank and filed up an investigation and had a botched search warrant and let somebody get off the hook. I understand that, but there are still interests in play that are in play. What? The privacy interests that... What privacy interests? The privacy interests of the third parties who are identified in the search warrant affidavit. And I've provided the Court with the search warrant affidavit and the indictment. If you look at those documents, you can see that there are numerous other parties that are specifically identified in those documents as being involved in the wrongdoing. And if the Court wants sites to that, I can give you those sites to look at and you can see how far it goes. So if the thing goes into litigation, the search warrant goes into litigation in court, all that's going to come out? If the search warrant were to go into litigation, that would come out. And presumably the party, Mr. Cott, who was litigating, would have some interest in protecting those privacy rights and or, and this is what I would be urging the Court to do. This is why the Court, the Fourth Circuit in particular, if you look at Baltimore Sun and the In Re Search Warrant Affidavit, what they have said is, look, post-indictment, obviously the government's interest is left because the investigation is now public. The indictment is made public. So the investigatory interests to protect the affidavit are no longer there. Although, as I would suggest, there can't be instances when it will. But there's still privacy interests to look at. How do we accommodate that? The Fourth Circuit says we don't apply a First Amendment right of access. There's no court proceeding that triggers a First Amendment right of access. Instead, we apply a common law right of access. And the difference there is significant, because a common law right of access allows the Court to engage in a balancing of all these interests we're talking about, to balance Dow Jones' interest in revealing it, the privacy interests of Mr. Cott and the other parties named in the search warrant affidavit who will never have a chance to come into court, take that as a whole and determine, A, is disclosure as a whole warranted, or is some form of redaction warranted? And if you look at the cases, that's what they do. And it's a fallback position. That is what we would urge the Court to do. That is distinctly different from the First Amendment right of access, where, in essence, the Court is essentially obligated, perhaps in a very narrow form of showing, to disclose the whole thing. So that's the search warrant. Roberts. So the Fourth Circuit says the common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the  warrant. That's correct. And if you look at traditionally what has happened, what the Fourth Circuit says is traditionally, and this is how it has normally worked, traditionally the officer issuing a warrant, this is pre-indictment. Pre-indictment, the magistrate issuing a warrant traditionally exercises their discretion to decide whether it should be sealed. That's what the Baltimore Sun case is talking about there. But the in-ray search warrant affidavit, the Fourth Circuit case there, the other case, look at the post-indictment time, and in essence there also give discretion to the district court to balance these interests and decide whether disclosure is warranted if there is not going to be a court proceeding at which it's going to be litigated publicly. So what are you asking us to do? What we would ask you to do is initially, as our initial position, is to follow in Zunza. If the Court is not going to follow in Zunza, we would urge the Court to adopt the Second Circuit in Newsday and the other district court opinions that Dow Jones has cited, which is post-indictment, but when there's not going to be a court proceeding, apply only the common law right of access and not the First Amendment right of access. If the Court does that, that would require a remand to the district court because the district court applied only the First Amendment right of access standards in determining that disclosure was warranted. And that's what we would urge the Court to do. Okay. What was the precise status of, quote, the case to which the search warrant related in the Baltimore Sun case? In the Baltimore Sun case, the search warrant was related to the – I mean, it was the case that was before the Court. In other words, the search warrant had gathered evidence that related to the case that was before the Court. In Baltimore Sun, at the time of the decision, the indictments – by the time the Fourth Circuit decided the case, the indictments had been returned already. So they were looking at it post-indictment. The other Fourth Circuit case, In Re, Application and Affidavit for Search Warrant, again, it was a search warrant that gathered evidence for that case, and again, it was post-indictment, but they applied only the common law right of access. The other case that does that is the Cianci case. And what I'm trying to get at is, were they – was the Baltimore Sun after the warrant while the case was still in play, or was the case over? Yes. Yes. As far as I – there has not been a case exactly on all fours with these where the case is over. This is, as Dow Jones has noted, this is an odd and unusual case because of the way this happened. But the way this happened and the fact that this case is odd and unusual, in fact, suggests this is not a case where the Court should reach out to create a novel First Amendment right of access that is going to have long-term effects. It is not uncommon for the government to file an indictment, for example, that names a large number of defendants. One defendant or two defendants may then be picked up. At that point in time, even though it's post-indictment, the government has a very strong interest in retaining that indictment under seal, and the district court should have the ability, using a common law right of access, to balance the government's interest and not be forced to unseal the entire indictment. The Baltimore case is interesting. The magistrate unsealed the stuff there, and the court said, well, it's not moot anyway because this is subject to repetition. Correct. Correct. So what they were fighting about was out in the public arena. Although if you look at the later case, the in-ray search warrant affidavit and application, also out of the Fourth Circuit, in that case it wasn't in that posture. It was post-indictment, and yet the court still applied only the common law right of access. So with that, unless you have other questions? Let it not be said that there's any restriction on the First Amendment in this courtroom. Thank you, Your Honor. I do appreciate you being given the opportunity. Okay. Thank you. Ms. Garofalo, why don't we hear from you, and then we'll allow you a chance to respond. I realize this is an unconventional order, but I think this will get all the arguments out on the table. Thank you. Okay. For clarification, there were actually two search warrants. One was executed at J.B. Oxford. The other was executed at Mr. Cott's home. There were two search warrants. Presumably there are two affidavits, although I can't confirm that there were separate affidavits with search warrants. And access to both search warrants and affidavits are at issue in this case. Yes, they are. The cases relied on by Dow Jones, which talk about a presumptive right of access to indictments, are distinguishable. And in their papers and in these proceedings, Dow Jones has glossed over what it appears to us to be an important distinction. The notion that a charging document should be public is one that's well-founded in principles of due process. And the notion derives from the abhorrence of star chambers for secret proceedings against a defendant. And in some ways, the First Amendment right of access ties back to a defendant's rights, because by keeping the press advised and therefore the public advised, it serves as a check on government misconduct and government overreaching. So to some extent, the whole notion of access to a charging document to an indictment really protects an individual defendant by keeping the public apprised of what its government is doing, what its judicial offices are doing. This indictment is different. It was dismissed. There is no case on record in which a dismissed indictment is considered a charging document subject to a First Amendment right of disclosure. Am I correct that if we agree with you, in the future, all defendants who work out plea agreements via informations will be entitled to have the indictment that's hanging over their head hidden from public eyes, period and forever? Not necessarily, because there are cases, the majority of cases, anecdotally, of course, in which there's a plea to an information, it's pre-indictment. In those cases where the plea to an information is post-indictment and Mr. Cardona can confirm or not, the indictment may not necessarily be dismissed. It may be a true superseding information. This was an unusual case. The charging document in this case was public. It was in the public record. It remains in the public record. Yeah, but if it's, if the other side is correct, there was a stipulation in the plea agreement that the indictment may be reinstated at any time up until the point at which this is signed, sealed, and delivered. Well, that may be true. The forcing, what was forcing the action here was the indictment. But so why isn't it correct that if we rule in your favor, we empower defendants to seal indictments and to keep prying public eyes away from them? What's to distinguish your case from all other cases where a defendant might say, wow, what a great idea. We can get, we can get rid of this indictment plea to some nickel and dime thing on an information and we're clear. What defense attorney in his or her right mind wouldn't go for that kind of a get rid of the indictment deal and block the public from ever taking a look at the indictment? I think that gives the defense bar considerable leverage over the government, which it's not been my experience. It has. I believe in this case and I believe in most cases the government charges consistent with its policy the most serious crimes it believes are founded in the evidence. And I believe the government did that in this case. The government has and had the opportunity in this case perhaps to reconsider the indictment returned almost a year before after negotiations and plea discussions with defendant's counsel. The government and not only is the plea agreement and the charging document in the public record but there is a substantial memorandum setting forth the government's position and the reasons why this plea was appropriate. And the government notes in that memorandum that this plea was, that the indictment in this case was returned in order to preserve the government's ability to proceed in the future. In some ways, in our view, this indictment was not right. The government investigation had not been completed and the government implicitly concedes that in its memorandum. The government says we had a problem. Statute of limitations was running. Mr. Cott was out of the country. We needed more time than we needed to do something. This is an unusual, really a unique indictment. We've not been able to find any case close to this in the record in any circuit. And I believe that it warrants a different analysis from those cases in which a charging document is found to be accessible to the public. And I would agree that a charging document that's preceded upon a full-blown document based on a completed investigation in which the defendant has to come to court to answer is a public document. And I don't think Mr. Cardona or anybody else would dispute that. This was a very different kind of document. You rendered it a non-public document by pleading guilty to some information with the indictment hanging over your head. I just don't see the difference. Well, because I think the information was a different document with different allegations. That's a distinction without any difference at all. It's the same ball of wax. The difference is that the information was agreed to. The factual basis for the information was admitted by Mr. Codd and agreed to by Mr. Codd. So what you're saying is in other cases a defendant can wipe out anybody's right to take a look at an indictment by pleading guilty to an information. In the system of checks and balances, if the government agrees that a particular information is appropriate, there's a plea to the information and there is an underlying indictment that's dismissed, it is not clear to me from the case law that the public has a right to access to an underlying indictment that was never intended to be public. Sure. Part of classifying information in national security, the government, the public, we the people, first three words of the Constitution of which you're immediately aware. You know, this government belongs to the people and the people have a right to see how it functions. And short of some specific category to which information falls, that's protected from some overriding reason, national security, classified information, you name it, the public gets a chance to look at what the government's doing to its people. The public does not have an unimpeded right to access. And in the press enterprise world... But you've got to give me some reason that cuts against the public's interest in taking a look at things. Not just that my client is embarrassed by something that he's never seen. A defendant in a criminal proceeding has the right to discovery, the right to come into court, look at the charges against him, and say, I have evidence to show that I am not guilty of what's being alleged. I did not commit the acts that are being alleged. We have a case here and the defendant still has rights and interests, even a defendant who's pled to an information. We have a defendant here who has never had the opportunity to review discovery, who has never had the opportunity to come into court. He had the opportunity. He had the opportunity to take advantage of it. He had the opportunity. He did not take advantage of it. Discovery was not provided by the government in this case. You had the opportunity to ask for it. Access to the under seal indictment was not provided. It was requested but not provided. You asked for it and the government said you can't see the indictment? We did. At what stage did you ask for it? We asked for it at the time that it was returned. Yeah, but at that time there were reasons why the government wanted to keep it secret. As the case went forward, did you ask again? We made an informal request for it after the plea was entered and were denied access. Okay. Thank you. Thank you very much. Mr. Boutrous, if you'd like to say a little something, you're welcome to do so. Let me go back to the government's argument first. I did not hear anything from counsel arguing against releasing the indictment. The government focused its arguments solely on the search warrant materials. There's no basis for keeping this indictment secret. Ms. Garofalo's suggestion that this was basically a grand jury indictment that was done for discovery purposes. I mean, this is nothing. The grand jury sat and listened to evidence that had been collected over a seven-year period and then just willy-nilly tossed out an indictment. There's no support for that. She doesn't know that because she claims she's never seen the indictment. Mr. Cardona never said that the government felt that they had overcharged Mr. Cott. And, in fact, they said in the sentencing memorandum that this was serious criminal conduct that was involved, but because of extradition reasons and other reasons, they came to this plea agreement. And, furthermore, the notion that this indictment didn't trigger the judicial process, that it was just this piece of paper that no one took seriously, no big deal, the judge issued a bench warrant for the arrest of Mr. Cott based on the indictment. Now, he was in Canada, where he will not leave. But this was the machinery of the government indicting a citizen. And, as Judge Crock pointed out, the Supreme Court has said the courts, what happens in a courtroom and in a court is public property. Is there a formal request to extradite him from Canada? Your Honor, I can't remember. I don't know if they ever made a formal request. And, in fact, I think they filed the indictment. The indictment was filed, and then, according to the record we've seen, there was this intense period of negotiation. But I don't think that the machinery was launched to actually formally indict him. And that's one of the reasons it's interesting to the public. Maybe we need to fix those rules. Maybe the courts need to be able to do a better job if there are alleged criminals who are defrauding the public in the United States from foreign countries. If the government is unable to pursue them through prosecutions of the actual offenses they've committed, that's something that the public should know about. So that's one of the reasons that the district judge and why we argued that there's a very strong public interest in the release of these documents. With respect to the notion that the common law test that Mr. Cardona argued, we did cite the common law cases. In the Newsday case from the Second Circuit is one where there had been a plea, much like this case. And the Second Circuit held there was a common law right to access that traditionally warrant materials are released at that point, and released the material. The Fourth Circuit Baltimore Sun case, I think that the district judge did apply that case and the test. We cited those cases and judged. What test did the district court use here on the search warrant affidavit? On the search warrant, she applied the First Amendment test. But I couldn't see where the common law test had been used. Did I miss that? Well, we argued the common law test, and she cited the common law cases. In the Fourth Circuit, in the Baltimore Sun case on pages 65 and 66, really applied a similar test under the common law, that there must be some reason that higher value than openness. And it really tracks very closely. The court said this is a common law issue, but applied a similar test. And that's really what the district court did here. She did not separate it out, but I think we cited the common law cases, and so she applied the First Amendment test, but engaged in the balancing between these alleged privacy interests, which have only been asserted in the most conclusory way. And we found that there was no basis for sealing the search warrant. And, again, neither the government or Mr. Cott argued for redaction to the district judge. So they've waived that argument, and it's too late for them to argue it now. And the Baltimore Sun case also makes the point I made earlier, that conclusory assertions that a third party's rights might be infringed upon are not enough. They must be specific and laid out in a way that the courts could grapple with them in a rational way. And here, just to finish on this point on the privacy rights, in a normal case, as the court was pointing out earlier, once there's an indictment, and let's say there's a suppression hearing, and if the warrant includes materials regarding third parties, that material would come out on the record. Third parties don't have any right to come in and start arguing their case to the court at that point, but the search warrant affidavits are still released. So this is no different than that situation. And here the third parties have a much stronger argument. They can make the arguments that Ms. Garofalo has been making. Look, this never went anywhere. The government ultimately agreed to this plea bargain, which was for these two charges that had nothing to do with all these allegations in this 48-count indictment. So there's ample protections. And, again, we think here there's strong public interest in release of the indictment and the search warrant materials. And there have just been no articulated reasons other than the fact that Mr. Cotton does not want the information out. But there's a pretty serious difference between the First Amendment test and the common law test, though, isn't there?  Under the common law, I think the district judge has greater discretion to unseal the material or to seal the material. Or to seal it. Yes. And here the district judge, you know, considered all these arguments. As I said, we argued the common law. They argued the common law against us. And the district judge, I think, implicitly found that there was no basis for keeping these indictments sealed. The First Amendment is more bright-line and absolute than the common law test. Is that right? The First Amendment, I think, provides a stronger level of access. And here we believe the First Amendment has been triggered with respect to both of these documents because of the posture of the case. Because it's post-indictment. Because it's post-trial. One of the cases, the Cianci case, I believe, that Mr. Cardono referenced, said once the danger to the fair trial rights of the defendant has passed, then invariably, inevitably, the material, search warrant material, should come out. And clearly, again, we're way past that in this case. We cited that case, Your Honor, on pages 52 and 53 of our brief. And I'm going to put it out back to you in responding to the government's argument. So there's no basis for keeping this material secret. And the unique features that Ms. Garofalo mentioned in her last statement all militate strongly in favor of openness. These are traditional documents. They're traditionally open. And there's something that smacks of deviation from ordinary procedure that makes the public's interest in seeing the information all the greater. Thank you very much. All good things must come to an end. The case of United States, Dow Jones v. Cott, reading off the date sheet, is now submitted. Thank you for a very helpful argument on both sides. Thank you.  Thank you.
judges: Trott, W. Fletcher, Restani